[Crim. No. 12605.   Second Dist., Div. One.   Sept. 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT OWEN JOHNSON et al., Defendants and Appellants.

120

Howard Meyerson for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—In an information filed in Los Angeles County on September 16, 1965, Johnson and Garrison were charged with robbing William Harris of about $25 on June 22, 1965. It was further charged that Johnson previously, on November 10, 1964, was convicted of a violation of section 11530, Health and Safety Code, a felony. Defendants pleaded not guilty and Johnson denied the prior conviction. In a trial before the court, without a jury, each defendant was found guilty of robbery in the second degree. No finding was made by the judge with reference to the truth of the charged prior felony conviction even though the superior court file of the case (People v. Johnson, No. 290,718) was introduced into evidence by the prosecution, and that record discloses that Johnson had pleaded guilty to the charge of possessing narcotics as charged in the information. Each defendant was sentenced to the state prison for the term prescribed by law. The court further, in spite of making no finding as to the truth or falsity of the charged prior, in Johnson's case numbered 290,-718, revoked the probation previously therein granted and sentenced Johnson to the state prison, the sentence to run concurrently with the robbery sentence. A timely notice of appeal was filed for each defendant.

A résumé of some of the facts is as follows: The crime occurred on the evening of June 22, 1965, at about 10 p.m. when William C. Harris, a 61-year old maintenance man at the Regency Hotel on Hollywood Boulevard, was returning from the drugstore with a quart bottle of 7-Up and a newspaper for one of the guests at the hotel. Suddenly appellants, clad in T-shirts and dark pants, jumped out of a car parked at the curb and accosted Harris. While Garrison ran toward the victim, talking loudly and shaking his fists, Johnson maneuvered himself to a position behind Harris. Harris tried to hit Johnson over the head with the soft drink bottle, but Johnson knocked it out of his hand, grabbed his arm and threw him down, shouting to Garrison, "Get his billfold." Both defendants then began beating Harris and finally Garrison took Harris' wallet, which contained about $25. Once Garrison had the wallet, Johnson told someone in the parked car to get going and the car then turned right and drove down Fairfax. Johnson ran east and Garrison ran west down Hollywood Boulevard.

Harris returned to the hotel and called the police, who arrived soon thereafter and took him to Hollywood Receiving Hospital for treatment of shoulder and knee injuries. That hospital and the Hollywood police station are on the same grounds with adjoining entrances. As Harris was leaving the hospital he saw Johnson and Garrison in handcuffs entering the police station and he immediately identified them to the police as his assailants.

Officers Ingledew and DeBolt, of the Los Angeles Police Department, earlier that evening had received a radio call to the effect that Johnson, identified by name, was wanted for assault with a deadly weapon which he had committed with a described companion. The assailants in that crime were described as wearing white T-shirts and blue jeans, and driving a white or green, 1956, 4-door Chevrolet. At about 10:55 p.m., while these officers were at a service station on Cahuenga Boulevard talking with the victim of the previous assault, the victim shouted to the officers, "There they go" as defendants drove by the station. The officers identified the white and green 1956 Chevrolet passing by, stopped the car and arrested its occupants, Johnson and Garrison.

Appellants testified in their own defense that they met in Hollywood at a beer bar known as the "Tiki" around 6 p.m. on the date of the robbery and went from there to Biff's restaurant around 7:30 p.m. They admitted that Garrison be-

came involved in a fight at Biff's and said that an hour or so later they returned to the "Tiki" where Johnson had a date to meet Nancy Sheldon. There they remained until Mrs. Sheldon had to leave, shortly after 11 p.m. Appellants and a companion then left the "Tiki" in Johnson's green and white Chevrolet and were apprehended by police at the service station shortly thereafter. Serious doubt was cast upon the testimony of two other "Tiki" patrons who attempted to verify this defense. Although they testified generally that they were present and observed appellants at the "Tiki" from about 9 p.m. until 11 p.m. on the evening of June 22, 1965, their vagueness as to the time appellants were there and concerning the activities of appellants, rendered their observations of dubious value. Moreover, Johnson's statement, made freely and voluntarily to the police shortly after his arrest, contradicted this testimony. In that statement, which he found it necessary to deny in court, he admitted that following the fight at Biff's appellants merely went driving around aimlessly.

Appellants contend that they were deprived of a fair trial because the trial court, in its extensive examination of certain witnesses, undertook the role of prosecutor rather than that of impartial judge. This contention, which is unsupported by specific references or authorities, is without merit.

We observe, from a review of the record, that appellants interposed no objection to the trial court's interrogation of these witnesses. ▉ "One of the fundamentals of appellate review is that, except in special circumstances not present here, the admissibility of evidence will not be reviewed on appeal in the absence of a sufficient objection in the trial court. [Citation.] ▉ Likewise, where a party seeks to suppress evidence under a claim of constitutional or statutory privilege, his privilege is lost by failure to assert it at the appropriate time. [Citations.]" (*People* v. *Garrison*, 246 Cal.App.2d 343, 350 [54 Cal.Rptr. 731].)

▉ The record herein shows that the trial court not only acted within the limits of propriety and sound discretion, but capably discharged its judicial responsibility to clarify ambiguities and elicit relevant details. "A trial judge may examine witnesses to elicit or clarify testimony [citations]. Indeed, 'it is the right and duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence.' [Citation.] The trial judge, however, must not become an advocate for either party or under the guide [*sic*] of examining witnesses comment on the evidence

or cast aspersions or ridicule on a witness. [Citations.]'' (*People* v. *Rigney*, 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].)

In the instant case, judicial interrogation was conducted within acceptable limits and, far from depriving appellants of a fair trial, insured them a sound decision based upon the disclosure of all the essential, relevant facts. The court in every instance deferred to counsel, allowing the attorneys ample opportunity to question the respective witnesses and receiving assurance that they had finished before supplementing the interrogation. At no time did the court comment, embarrass a witness, or display bias. During the case in chief the court merely sought to clarify; during the defense presentation it sought to elicit additional relevant information, especially concerning estimates of time and determinations of the accuracy of defense witness observations. Under the circumstances, this procedure not only was permissible but was desirable.

The judgments are, and each is, affirmed.

Wood, P. J., and Lillie, J., concurred.